UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



PAMELA WILLIAMS,

        *Plaintiff*

    -*against*-

THE MOUNT SINAI MEDICAL CENTER,

        *Defendant*

Index No:

COMPLAINT

JURY TRIAL DEMANDED

11 CIV 5425

    Pamela Williams, by and through her attorney, Steiner & Kostyn LLP complains of defendants as follows:

### JURISDICTION AND VENUE

    1. This action seeks damages against defendants, with respect to plaintiff's former employment, for racial and skin color discrimination under Title VII of the Civil Rights act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"); the New York State Human Rights Law, Executive Law § 290, et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq.

    2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e, et seq.

    3. All conditions precedent to suit under Title VII have occurred or been complied with, specifically: (a) a timely charge of employment discrimination was filed with the Equal Employment Opportunity Commission; (b) a Notice of Right to Sue, a copy of which is attached hereto as Exhibit A, was received on May 13, 2011, and (c) this complaint has been filed within

ninety (90) days of receipt of the Notice of Right to Sue.

4. Pursuant to 28 U.S.C §1367, this Court has supplemental jurisdiction over state and local law claims arising from the same nucleus of operative facts and which are part of the same case or controversy as the federal claims.

5. Venue is appropriate in this Court under 28 U.S.C. § 1391 (b) and (c), in that plaintiff was, at all relevant times, a resident of this judicial district, the defendants, at all relevant times, did business in this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PARTIES

6. Plaintiff, Pamela Williams, is a black female who was born in Trinidad on August 27, 1965 and presently resides at 111 E. 100th Street, New York, New York 10029. Plaintiff was hired by defendant Mount Sinai Medical Center. ("Mt. Sinai") on August 29, 1995 as a phlebotomist. The position was abolished in about 1996, and Plaintiff was given the position of Patient Care Associate. Plaintiff worked as a Patient Care Associate for thirteen years, until her termination by defendant on March 23, 2011.

7. Defendant Mt. Sinai is an "employer" within the meaning of Title VII and other applicable anti-discrimination laws, and has a place of business at One Gustave L. Levy Place New York, NY 10029-6574. Mt. Sinai characterizes itself as a "1,171-bed, tertiary-care teaching facility acclaimed internationally for excellence in clinical care."

## FACTS

8. Plaintiff's employment with Mt. Sinai began on August 29, 1995 as a phlebotomist in a laboratory. In about 1996, the phlebotomist position was abolished, and Plaintiff became a patient care associate at Mt. Sinai, a position that she held until her termination by Mt. Sinai in

March, 2011. Plaintiff's race is black and her nationality is Trinidadian.

9. In her position as patient care associate, the plaintiff is required to have extensive interaction with a diverse array of patients in the course of her duties. According to a job description posted on the website for Mt. Sinai Hospital, the duties of patient care associate are as follows: Performs and maintains records of patient's vital signs, such as blood pressure, pulse, temperature and respiration; Documents intake and output; Performs specimen collection, and assists the RN in performing clinical procedures, such as venipuncture, physical exams, EKG, venodyn boots, post-mortem care, and maintenance of skin integrity. Sets up for selected procedures; Assists patient with activities of daily living such as feeding, bathing, and/or toileting; Orients patients to the unit / care center environment. Assists patient in walking independently or with a walker; Assists with dietary functions, including delivering and collecting patient trays at bedside, providing menus and assisting patients with menu completion, mixing nutritional supplements, reporting variations in dietary status to RN or Dietician, and maintaining accurate and timely systems for transmission of dietary orders and changes; Maintains a safe, clean and functional environment, ensuring for comfortable movement of the patient. Backs up the Support Associate in patient room maintenance, such as bed-stripping and trash removal; Performs one-to-one observation of patients on special observation status, e.g. safety, elopement, or suicide prevention; Under direction of an RN, and according to set procedures, will maintain isolation status and mechanical safeguards for patients; Answers call system and refers to appropriate staff; Delivers and collects trays at bedside, and delivers flowers; Transports patients on stretchers or wheelchairs, as required; Operates the pneumatic tube system when required; Greets visitors and answers telephones promptly and courteously. Escorts visitors to appropriate area, when necessary. Provides information and makes referrals

when appropriate.

10. As can be seen from the above description of the duties of the patient care associate, the position requires sensitive contact with patients and helping them with their personal needs under trying situations.

11. Plaintiff conducted herself appropriately and satisfactorily as a personal care assistant at Mt. Sinai for more than thirteen years.

12. From the inception of her employment in August 1995 and until 2009, the Plaintiff performed her duties at Mt. Sinai without any reported incident. From 1995 until 2009, Plaintiff uniformly received positive performance evaluations and was never cited by defendant for any performance related issues. Prior to 2009, Plaintiff had no issues with her supervisors and was never cited for disciplinary violation.

13. In 2009, and thereafter until her termination, the Plaintiff continued to perform her duties in a proper and even exemplary manner.

14. However, in about October, 2009, an individual named Jennifer Jaromahum was hired by Mt. Sinai and put in position as Plaintiff's immediate supervisor. Ms. Jaromahum, upon information and belief, had authority to hire, discipline, and terminate the patient care supervisors, including plaintiff, working under her supervision.

15. Upon information and belief, Jaromahum is of Filipino heritage.

16. Jaromanhum began to target black employees, including employees of West Indian descent, including the Plaintiff, for unfair and discriminatory treatment, and make conditions of their employment more difficult for them.

17. Upon information and belief, seven black employees of Mount Sinai, working in Ms. Jaromanhum's unit, were either terminated or forced to resign in and after the fall of 2009.

Many of the terminated black employees had been long-term employees of the defendant. The terminated black employees were replaced by Caucasians or persons of Filipino heritage.

18. Among the employees terminated because of discriminatory animus was the Plaintiff.

19. Prior to Ms. Jaromanhum's appointment as Plaintiff's supervisor, the Plaintiff had never been the subject of any disciplinary complaint or action, and had always received favorable performance evaluations.

20. In fact, in the performance evaluation for 2009 (Service Standards Appraisal Form), Plaintiff was held to have exceeded expectations in Caring, Empathy, Communication, Appearance, Hospitality and Sensitivity. Plaintiff met expectations in all other areas, including Courtesy.

21. Beginning in the fall of 2009, when Ms. Jaromanhum was appointed supervisor, defendant began to take actions against plaintiff adversely impacting her employment and leading to her termination.

22. For example, Ms. Jaromanhum, on a number of occasions, informed plaintiff that patients did not like her because of "the way that patients perceive you."

23. Also, Ms. Jaromanhum denied plaintiff the opportunity to take classes on Saturday mornings, even though plaintiff had identified another personal care assistant to work in her place and stead.

24. On or about August 13, 2010, the Plaintiff was performing her duties, and assisted a patient in the admissions process. The patient was not conversant in the English language.

25. On or about August 20, 2010, Plaintiff was informed that the aforementioned patient, on August 13, had lodged a complaint against the Plaintiff and others who assisted him with admission, and Plaintiff was instructed to write a statement concerning the reported incident.

26. On September 3, 2010, the Plaintiff was written up with a final warning, alleging that the Plaintiff was "laughing while pointing at his [private] part." The warning also alleged that the plaintiff stated "Chinese guys eat too much fried rice" in front of the patient.

27. Despite Plaintiff's denial that she made any inappropriate statements (and her unblemished record, making such an occurrence unlikely), the Plaintiff was issued a "final warning' on September 3, 2010. The final warning was issued, even though the plaintiff had not been issued any prior disciplinary warnings in the course of her fifteen-year career with defendnt.

28. On about February 3, 2011, defendant issued plaintiff another warning notice and a five-day suspension to the plaintiff based upon the bare allegation that the plaintiff treated a patient rudely.

29. On March 3, 2011 plaintiff was discharged upon the allegation that "based upon review, it was determined that your actions and behavior impacted negatively on patient satisfaction and violated medical center rules."

30. Upon information and belief, the incidents upon which plaintiff's termination was allegedly based were not properly and fairly investigated and were not processed in due course pursuant to the principals of progressive discipline.

31. Upon information and belief, Filipino and Caucasian employees of the defendant in Ms. Jaromahum's unit did not face similar discipline or scrutiny when patient complaints were lodged against them.

32. Upon information and belief, Plaintiff was replaced in her position by an employee of Filipino heritage.

33. Upon information and belief, Plaintiff was terminated because of her race and

nationality, as part of an effort, and a pattern and practice on the part of Ms. Jaromanhum, and sanctioned by her supervisors, to remove black employees and employees in her unit with Filipino or Caucasian workers. The reasons cited for her removal were pretextual.

34. The above actions by defendant constitute unlawful discrimination on the basis of race and color in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; the New York State Human Rights Law, Executive Law § 290, et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq.

### AS AND FOR A FIRST CAUSE OF ACTION
### (RACE DISCRIMINATION – TITLE VII)

35. Plaintiff repeats and realleges the allegations of paragraphs 1 through 34, as if set forth herein at length.

36. The acts of the defendants constituted unlawful discrimination on the basis of race and color, in violation of Title VII.

37. As a direct and proximate result of defendant's actions, plaintiff has suffered harm and is entitled to damages and relief under Title VII.

### AS AND FOR A SECOND CAUSE OF ACTION
### (RACE DISCRIMINATION – STATE HRL)

38. Plaintiff repeats and realleges the allegations of paragraphs 1 through 37, as if set forth herein at length.

39. The acts of the defendant constituted unlawful discrimination on the basis of race and color, in violation of the New York State Human Rights Law ("State HRL").

40. As a direct and proximate result of defendant's actions, Plaintiff has suffered harm and is entitled to damages and relief under the State HRL.

## AS AND FOR A THIRD CAUSE OF ACTION
## (RACE DISCRIMINATION – CITY HRL)

41. Plaintiff repeats and realleges the allegations of paragraphs 1 through 40, as if set forth herein at length.

42. The acts of the defendants constituted unlawful discrimination on the basis of race and color, in violation of the New York City Human Rights Law ("City HRL").

43. As a direct and proximate result of defendants' actions, Plaintiff has suffered harm and is entitled to damages and relief under the City HRL.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Assume jurisdiction of this action;

2. Issue a permanent injunction enjoining defendants from further violations of the aforementioned laws;

3. Issue a declaratory injunction that the acts of defendants complained of were in violation of the aforementioned laws;

4. Order defendants to make Plaintiff whole for all earnings and other benefits he would have received but for defendants' violations of law, including but not limited to: wages with prejudgment interest thereon, pension, and other lost benefits;

5. Order defendants to pay Plaintiff compensatory and punitive damages for injuries suffered as a result of defendants' violation of the aforementioned laws;

6. Award Plaintiff the costs and disbursements of this action together with reasonable attorney's fees; and

7. Award Plaintiff such further and additional relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues.

Dated: August 4, 2011
      White Plains, New York

Respectfully submitted,

STEINER & KOSTYN LLP

By: *[signature]*
Scott J. Steiner (SS-0484)
Attorney for Plaintiff
2 William Street, Suite 302
White Plains, NY 10005
(914) 328-4734

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| **To:** Pamela Williams-Simpson<br>111 East 100th Street, Apt 2I<br>New York, NY 10029 | **From:** New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2011-01829 | Ashraf A. Ahmed,<br>Investigator | (212) 336-3781 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*[signature]* 5/11/11

Kevin J. Berry, (Date Mailed)
District Director

Enclosures(s)

cc: **Director**
**Human Resources**
**MT. SINAI HOSPITAL**
**1 Gustave L Levy Place**
**New York, NY 10029**