UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAMELA WILLIAMS,                                    :

               Plaintiff,                  :               11 Civ. 5425 (AJP)

         -against-                     :               **OPINION AND ORDER**

THE MOUNT SINAI MEDICAL CENTER,                    :

              Defendant.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Plaintiff Pamela Williams, a forty-six year old African American woman, brings this action against defendant The Mount Sinai Hospital,[1] alleging violations of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). (Dkt. No. 1: Compl. ¶¶ 1, 6, 35-43; Dkt. No. 6: Answer at 1.) Williams asserts that Mt. Sinai unlawfully discriminated against her on the basis of her race and color. (Compl. ¶¶ 36, 39, 42.)

        Presently before the Court is Mt. Sinai's summary judgment motion. (Dkt. No. 22: Notice of Motion.) The parties have consented to decision of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 9.) For the reasons set forth below, Mt. Sinai's summary judgment motion is <u>DENIED</u>.

---

[1]     The defendant was incorrectly named in the complaint as The Mount Sinai Medical Center. (Compl.)

2

## FACTS

In August 1995, Williams began working as a phlebotomist in Mt. Sinai's Clinical

Microscopy Unit.  (Dkt. Nos. 35 & 43: Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 1.)  From May 1996

until her discharge in March 2011, Williams worked as a Patient Care Associate ("PCA") in Mt.

Sinai's GP 8 East, Orthopedic Unit, Surgical and Medical Specialties and Emergency Services ("8

East").  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 2.)  PCAs assist registered nurses with patient

care, including "assisting patient with activities of daily living, collecting specimens and performing

procedures; maintaining a safe, clean environment."  (Dkt. No. 23: McEvoy Aff. Ex. 1: Williams

Dep. at 19-20 & Dep. Ex. 2: PCA Position Description.)

On October 19, 2009, Jennifer Jaromahum began working as 8 East's Clinical Nurse

Manager and was responsible for the "day-to-day nursing operation" and the management of PCAs

and nurses.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 28-29; McEvoy Aff. Ex. 2: Jaromahum Dep.

at 19-20, 160-61.)  Williams consistently received positive performance reviews in her position as

PCA and did not receive formal discipline until 2010, after Jaromahum became her manager.

(Williams Rule 56.1 Stmt. ¶¶ P1, P33.)[2]

## Mt. Sinai's Disciplinary System

Mt. Sinai uses a progressive discipline system.  (Dkt. No. 43: Williams Rule 56.1

Stmt. ¶ P27; Dkt. No. 23: McEvoy Aff. Ex. 2: Jaromahum Dep. at 66-68, 110; Dkt. No. 38: Steiner

Aff. Ex. 9: Johnson Dep. at 10-27.)  Typically, a first warning is issued in the first instance where

discipline is necessary, and when additional discipline is necessary, it becomes more severe.

---

[2]     Williams' Rule 56.1 Statement provided additional material facts in numbered paragraphs 1-65.  (See Williams Rule 56.1 Stmt. at pp. 30-42.)  The Court will identify Williams' additional material facts as "P_" (e.g., Williams Rule 56.1 Stmt. ¶ P1).  Mt. Sinai never responded to these supplemental paragraphs.

(Williams Rule 56.1 Stmt. ¶ P27; Jaromahum Dep. at 66-68; Johnson Dep. at 10-27.)  The last three disciplinary steps generally are a final warning, a final warning with suspension and termination. (Williams Rule 56.1 Stmt. ¶ P27; Jaromahum Dep. at 66-68, 110.)  In some instances, however, progressive discipline may not apply.  (Williams Rule 56.1 Stmt. ¶ P28; Johnson Dep. at 16-20.)

Managers must contact a Senior Labor Relations Specialist ("Specialist") in the Labor Relations Department before discipline more severe than a documented counseling is issued.  (Dkt. Nos. 35 & 43: Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 23; Dkt. No. 26: Cohen Aff. ¶ 3.)  While managers can recommend a level of discipline, Specialists determine the discipline to be imposed on the employee.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 25.)  The manager drafts the warning notice at the instruction of the Specialist, and after the Specialist approves the notice, the manager issues it to the employee.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 26-27.)

**April 17, 2010 Patient Complaint**

On April 17, 2010, a discharged patient emailed Jaromahum complaining that Williams "was rude and very difficult to get help from."  (Dkt. Nos. 35 & 43: Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 35, P17; Dkt. No. 23: McEvoy Aff. Ex. 2: Jaromahum Dep. at 46-50 & Dep. Ex. 1: 4/17/10 Patient-Jaromahum Email.)  Jaromahum discussed the patient complaint with Williams and "encouraged her to be careful with her patient interactions."  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 36, P17; Jaromahum Dep. at 48-50.)

**May 13, 2010 Patient Complaint**

On May 13, 2010, another patient complained to Jaromahum that Williams had told the patient to "'hold it'" as the patient was about to vomit.  (Dkt. Nos. 35 & 43: Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 37, P13; Dkt. No. 23: McEvoy Aff. Ex. 1: Williams Dep. at 25-27 & Dep. Ex. 8: 5/13/10 Doc. Counseling; McEvoy Aff. Ex. 2: Jaromahum Dep. at 104-10.)  Jaromahum gave

Williams a documented counseling and stated that further incidents of unsatisfactory patient care would result in disciplinary action.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 38, P12-P13, P16; Williams Dep. at 25-27 & Dep. Ex. 8: 5/13/10 Doc. Counseling; Jaromahum Dep. at 104-10.) Jaromahum maintains that Williams denied any wrongdoing.  (Mt. Sinai Rule 56.1 Stmt. ¶ 38; Jaromahum Dep. at 108-09.)  Williams asserts that she explained to Jaromahum that the patient was about to vomit in a basin containing the patient's urine; thus, she instructed the patient to "'hold it'" while she got a clean basin.  (Williams Rule 56.1 Stmt. ¶¶ 37-38, P14; Williams Dep. at 25-27.)

**August 14, 2010 Patient Complaint**

On August 14, 2010, a Chinese patient's son complained to nurse Dominique Monsegur that his father had been transported roughly and a female African-American staff member lifted his father's hospital gown, laughed while pointing to his father's genitals and said "'Chinese people has small penis.'"  (Dkt. Nos. 35 & 43: Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 39, P19; Dkt. No. 23: McEvoy Aff. Ex. 2: Jaromahum Dep. at 111-13; Dkt. No. 38: Steiner Aff. Ex. 9: Johnson Dep. at 37-38, 53-55; Dkt. No. 25: Richards Aff. ¶ 5 & Ex. 1: 8/14/10 Coronel-Richards Email.)  The complaint was brought to the attention of Clinical Nurse Manager Lorisa Richards, who was covering for the vacationing Jaromahum.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 41, P22.)  On August 16, Richards met with the patient using a Mandarin interpreter; the "patient said that he did not want to make a big deal, but that he wanted the Hospital to know that he understood the comment that was made about his private part."  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 42-43; Richards Aff. ¶¶ 2, 6.)  The parties dispute whether Williams was identified as making the comment.  (See Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 39, 43.)

In addition, Surgical Care Associate Kialani Chambers stated that Williams said the patient was "eating too much fried rice."  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 44, 48, P24; Johnson Dep. at 55-56; Richards Aff. ¶ 7 & Ex. 3: 8/20/10 Chambers Stmt.)

Upon returning from vacation, Richards updated Jaromahum, and Jaromahum emailed Karen Johnson, a black Labor Relations Specialist, to see how she should proceed.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 54-56, P22-P23; Jaromahum Dep. at 124-27; Dkt. No. 23: Johnson Aff. ¶ 2.)  An investigation confirmed that Chambers transported the patient to his room and that Williams was one of the PCAs assigned to the patient.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 46-47, P22.)  Williams provided the following statement:

> I greeted the patient by saying "Welcome to 8 East", like I usually do, Kareen informed me that the patient didn't speak any English.  I said "O.K."  We all assisted the patient to the bed.  The transporter and Margaret left the room first, Kareen and I got the patient settled in bed and then left.  I had another admission waiting to attend in room 310B.

(Richards Aff. ¶ 9 & Ex. 7: 8/20/10 Williams Stmt.)  Williams' statement, as well as statements from other staff, were sent to Johnson.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 48, 54, P22;[3/] Richards Aff. ¶¶ 8, 10 & Exs. 2-7: Stmts.)  None of the statements corroborated the complaint that a comment was made concerning the patient's private parts or identified Williams as making such a comment.  (Williams Rule 56.1 Stmt. ¶ P22; Jaromahum Dep. at 118-26; see Richards Aff. Exs. 2-7.)

After reviewing Williams' prior documented counseling, Johnson wrote Jaromahum to "recommend issuing Ms. Williams a First Level Warning as a result of the recent incident" and to request a draft warning notice.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 58-59; Johnson Dep.

---

[3/]   Williams' Rule 56.1 Statement combines paragraphs 47 and 48 as paragraph 47, throwing off the numbering of Williams' paragraphs 48 to 54.  (See Williams Rule 56.1 Stmt.)  The Court will use the numbering in Mt. Sinai's Rule 56.1 Statement.

at 39-41, 60-61 & Dep. Ex. 5: 9/2/10 Jaromahum-Johnson Emails.) Jaromahum sent Johnson a draft warning, and Johnson returned the revised warning to Jaromahum changing the level of discipline from a first to a final warning "because of the severity of the conduct." (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 60-63, P31, P34.) On September 2, 2010, Williams was given that final warning. (Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 64.)

**January 27, 2011 Patient Complaint**

On January 27, 2011, Jaromahum received an email complaint from a patient's daughter stating that her mother "was treated very badly by one of your PCA. I think her name is Pam . . . . She was very rude to my mom almost yelling at her to keep her table clean." (Dkt. Nos. 35 & 43: Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 65, P35; Dkt. No. 23: McEvoy Aff. Ex. 2: Jaromahum Dep. at 76-82 & Dep. Ex. 4: 1/27/11 Patient-Jaromahum Email.) Jaromahum discussed the incident with Williams and encouraged her to be more sensitive, and when Jaromahum visited the patient later that evening, she reported that "Pam was 'good' now." (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 66-67, P35.)

On January 28, however, the same patient complained to physical therapist Stephanie Suarez saying that Williams would not help her wash herself, was nasty and made her feel "'depressed,'" and requested that Williams no longer work with her. (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 68-70, P35.) Suarez emailed Jaromahum regarding the patient complaint, and Jaromahum forwarded the email to Johnson. (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 71-72.) In response to Johnson's request for Williams' performance history, Jaromahum responded, "She received a Final Warning for making a statement in front of patient, 'chinese people eats fried rice', this is after an allegation of 'laughing and pointing at a patient's private part' was made against her." (Jaromahum Dep. Ex. 4: 1/28/11 Johnson-Jaromahum Emails.)

Jaromahum asked Williams to provide a statement regarding the incident. (Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 73.)  While Jaromahum maintains that Williams refused but later complied with the order to provide a statement (Mt. Sinai Rule 56.1 Stmt. ¶¶ 73-74, 76), Williams asserts that she provided a statement the same day after sharing it with her union representative (Williams Rule 56.1 Stmt. ¶¶ 73, 76, P37; Williams Dep. Ex. 13: 1/31/11 Williams Stmt.). Jaromahum discussed the matter with Williams and concluded that Williams did not refuse to wash the patient but that the patient misunderstood.  (Williams Rule 56.1 Stmt. ¶ P36; Jaromahum Dep. at 95-100.) Jaromahum's conclusion, however, was not conveyed to Johnson or reflected in the draft warning notice.  (Williams Rule 56.1 Stmt. ¶ 36; Jaromahum Dep. Ex. 4: 2/3/11 Warning Notice; Dkt. No. 38: Steiner Aff. Ex. 9: Johnson Dep. at 68-69.)  Johnson decided to suspend Williams, and on February 3, 2011, Jaromahum suspended Williams for five days.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 77, P39.)

**March 17, 2011 Patient Complaint**

On March 17, 2011, a patient complained to Patient Representative Nina Kuscsik that she was concerned for her safety because when she asked Williams for help turning over, Williams replied, "'[d]o it yourself!'" (Dkt. Nos. 35 & 43: Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 78, P40.) The patient also complained that Williams said that she was "'throwing away food that could be given to African babies'" and "'I saw you showing off yesterday,'" which the patient perceived as a negative comment.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 79, P40.)  The patient's roommate complained to Kuscsik that when she asked Williams, "'[d]o you know when my catheter will be removed?'" Williams responded, "'[y]ou can ask.'"  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 80; Jaromahum Dep. Ex. 2: 3/17/11 Kuscsik-Jaromahum Email.)

Kuscsik summarized the complaints in an email to Jaromahum.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 81; Jaromahum Dep. Ex. 2: 3/17/11 Kuscsik-Jaromahum Email.)  Jaromahum asked Williams to write a statement, and Jaromahum forwarded both Williams' and Kuscsik's statements to Johnson.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 83-84.)

On March 22, 2011, Johnson emailed Jaromahum stating that "'[t]he determination has been made to terminate Ms. Williams.'"  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 85.)  Jaromahum drafted a termination notice at Johnson's request, and Johnson revised it.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 86-87.)  On March 23, 2011, Jaromahum terminated Williams.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 88, P41.)

## June 1, 2011 Patient Complaint

On June 1, 2011, Jaromahum received an email from a discharged patient complaining that Williams had called her personal cell phone several times "in violation of HIPAA regulations."  (Dkt. Nos. 35 & 43: Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 90-91.)  Williams claims, however, that the patient had provided Williams with her phone number and that she did not access the patient's personal information to obtain it.  (Williams Rule 56.1 Stmt. ¶ 91; Dkt. No. 23: McEvoy Aff. Ex. 1: Williams Dep. at 116-23.)  Jaromahum forwarded the patient's email to Johnson.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 93.)  Jeff Cohen, Vice President of Labor Relations, instructed Jaromahum to issue Williams a second termination notice, which was mailed on June 6, 2011, although Williams denies receiving it.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 94-95, 97.)

**Mt. Sinai's Terminations of Other Employees**

   While Jaromahum was Clinical Nurse Manager of 8 East, other employees were terminated or resigned in lieu of termination.  (Dkt. Nos. 35 & 43: Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 98.)  From November 2009 to July 2011, Nurse Richard Crookson (Black) resigned in lieu of termination for falsification of records, PCA Cheryl Powdar (Black) was terminated for sleeping while on a one-to-one observation of a patient, Nurse Veronica Okoye (Black) resigned in lieu of termination for over medicating a patient, Nurse Margaret Wolf (Caucasian) was terminated for unsatisfactory performance during her probationary period, Nurse Lisa Miller-Farmer (Black) resigned in lieu of termination for failure to report to her scheduled shifts and to follow the notification procedure, Nurse Etta Longly-Henry (Black) was terminated for substandard patient care, and Nurse Filomena Heredia (Filipino) was terminated for unsatisfactory performance during her probationary period.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 99-100, P59.)  Specialists decided to terminate each of these employees, except the two on probation because managers can discharge employees during their probationary period.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 101, 103.)

**Comparator Elaine Buchsbaum**

   Elaine Buchsbaum was a Caucasian nurse on 8 East also disciplined by Jaromahum in 2010 and 2011.  (Dkt. No. 43: Williams Rule 56.1 Stmt. ¶ P42; Dkt. No. 38: Steiner Aff. Ex. 9: Johnson Dep. at 83-84.)  In April 2010, Jaromahum received a written patient complaint stating that Buchsbaum twice failed to deliver pain medication causing the patient to ring the bell for fifteen and twenty-five minutes respectively, and Buchsbaum reprimanded the patient when she got out of bed to find Buchsbaum.  (Williams Rule 56.1 Stmt. ¶ P43; Steiner Aff. Ex. 10: Jaromahum Dep. at 132-

35 & Dep. Ex. 7: 4/2/10 Patient Compl.)  Jaromahum discussed the incident with Buchsbaum and took no further action.  (Williams Rule 56.1 Stmt. ¶ P44; Jaromahum Dep. at 135.)

On July 2, 2010, Jaromahum received another written patient complaint, that Buchsbaum failed to respond to repeated requests for pain medication and had poor bedside manner. (Williams Rule 56.1 Stmt. ¶ P46; Jaromahum Dep. at 136-37.)  Jaromahum gave Buchsbaum a documented counseling.  (Williams Rule 56.1 Stmt. ¶ P47; Jaromahum Dep. at 136-37.)

On August 13, 2010, Patient Representative Irene Selver emailed Jaromahum regarding a complaint from a patient's wife against Buchsbaum for failure to provide pain medication and for Buchsbaum's statement:  "'I want your husband to be alive tomorrow,'" implying that the wife wanted her husband to be dead.  (Williams Rule 56.1 Stmt. ¶ P48; Jaromahum Dep. at 137-41 & Dep. Ex. 7: 8/13/10 Jaromahum-Selver Email.)  On August 27, 2010, the patient's wife followed up with a written complaint.  (Williams Rule 56.1 Stmt. ¶ P50; Jaromahum Dep. Ex. 7: 8/27/10 Patient Compl.)  Jaromahum gave Buchsbaum a second documented counseling but did not contact Labor Relations to initiate a discipline proceeding.  (Williams Rule 56.1 Stmt. ¶ P51; Jaromahum Dep. at 139-41 & Ex. 7: 9/24/10 Doc. Counseling.)

In January 2011, Selver notified Jaromahum of another patient complaint about Buchsbaum.  (Williams Rule 56.1 Stmt. ¶ P52; Steiner Aff. Ex. 4: 1/10/11 Selver-Jaromahum Email.)  The patient complained that Buchsbaum had no people skills, was rough with her causing pain, refused to help her sit up in a chair, and refused to monitor and implement temperature controls.  (Williams Rule 56.1 Stmt. ¶ P52; Steiner Aff. Ex. 4: 1/10/11 Selver-Jaromahum Email.) The patient's niece also complained that Buchsbaum's "attitude regarding getting the patient out of bed and not caring to monitor the temperature of the wound sites 'violated doctor's orders and was justification for a law suit.'"  (Williams Rule 56.1 Stmt. ¶ P52; Steiner Aff. Ex. 4: 1/10/11 Selver-

Jaromahum Email.)  The patient's roommate also complained that Buchsbaum failed to adequately assist her to the bathroom and failed to hook her back up to the IV.  (Williams Rule 56.1 Stmt. ¶ P53; Steiner Aff. Ex. 4: 1/10/11 Selver-Jaromahum Email.)  When the roommate reminded Buchsbaum that she had not been hooked up to the IV, Buchsbaum responded, "'oh, you don't need to be hooked up to the IV.'"  (Williams Rule 56.1 Stmt. ¶ P53; Steiner Aff. Ex. 4: 1/10/11 Selver-Jaromahum Email.)  The following morning, however, her doctor informed her that she should have been receiving fluids from the IV during the night.  (Williams Rule 56.1 Stmt. ¶ P53; Steiner Aff. Ex. 4: 1/10/11 Selver-Jaromahum Email.)  Buchsbaum was issued a First warning as a result of these complaints.  (Dkt. Nos. 35 & 43: Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 106, P55.)

In February 2011, another patient complained that Buchsbaum was "'abrupt'" and that she felt uncomfortable and concerned about her ongoing care during Buchsbaum's shift.  (Williams Rule 56.1 Stmt. ¶ P56; Jaromahum Dep. Ex. 7: 2/24/11 Selver-Jaromahum Email.)  Jaromahum recommended that Buchsbaum receive a Second warning.  (Williams Rule 56.1 Stmt. ¶ P57; Steiner Aff. Ex. 8: 3/1/11 Jaromahum-Johnson Email.)  Buchsbaum received a Second Warning for poor patient care that would be reduced to a First warning if there were no further complaints for one year.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶¶ 106, P58.)

In February 2012, Johnson decided that Buchsbaum should be issued a Final Warning for poor patient care.  (Mt. Sinai & Williams Rule 56.1 Stmts. ¶ 107.)

## ANALYSIS

## I.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P . 56(a); see also, e.g., Celotex

Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Ret. Living Pub. Co., 949 F.2d 576,

580 (2d Cir. 1991).

   The burden of showing that no genuine factual dispute exists rests on the party

seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct.

1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v.

Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may

discharge this burden by demonstrating to the Court that there is an absence of evidence to support

the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g.,

Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

   To defeat a summary judgment motion, the non-moving party must do "more than

simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the

non-moving party must "cit[e] to particular parts of materials in the record" to show that "a fact . . .

is generally disputed." Fed. R. Civ. P. 56(c); see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.

2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'" (citations omitted)),

cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

   In evaluating the record to determine whether there is a genuine issue as to any

material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are

to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[4/]

---

[4/]   See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM
   (continued...)

The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987).  To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.  While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

---

[4]/     (...continued)
Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

## A.    Additional Summary Judgment Standards in Employment Discrimination Cases

When a case turns on the intent of one party, as employment discrimination . . . claims often do, a "trial court must be cautious about granting summary judgment." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).[5/]   Because the employer rarely leaves direct evidence of its discriminatory or retaliatory intent, the Court must carefully comb the available evidence in search of circumstantial proof to undercut the employer's explanations for its actions. E.g., Gallo v. Prudential Residential Srvs., Ltd. P'ship, 22 F.3d at 1224. "[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." Danzer v. Norden Sys., Inc., 151 F.3d 50, 54 (2d Cir. 1998) (citations omitted).   Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination . . . , the Court may conclude that no material issue of fact exists and it may grant summary judgment to the employer. E.g., Budde v. H&K Distrib. Co., No. 99-9449, 216 F.3d 1071 (table), 2000 WL 900204 at *1 (2d Cir. June 29, 2000); Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Meloff v. N.Y. Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995).

---

[5/]    Accord, e.g., Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004); Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) ("[I]n an employment discrimination case when, as here, the employer's intent is at issue, the trial court must be especially cautious about granting summary judgment."); McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997) ("[C]aution must be exercised in granting summary judgment where motive is genuinely in issue."); Cardoza v. Healthfirst, Inc., 210 F. Supp. 2d 224, 227 (S.D.N.Y. 1999); see also, e.g., Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994).

In other words, to defeat summary judgment, "the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." Stern v. Trs. of Columbia Univ., 131 F.3d at 312; see, e.g., Schnabel v. Abramson, 232 F.3d 83, 90-91 (2d Cir. 2000); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (The question on summary judgment is "whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination.  To get to the jury, it is not enough . . . to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination." (quotations & alterations omitted)), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge'").[6/]  Indeed, the Second Circuit "went out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'"  Weinstock v. Columbia Univ., 224 F.3d at 41.

## II.    GOVERNING LEGAL STANDARD FOR TITLE VII CASES

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of

---

[6/]    See also, e.g., Budde v. H&K Distrib. Co., 2000 WL 900204 at *1; Scaria v. Rubin, 94 Civ. 3333, 1996 WL 389250 at *5 (S.D.N.Y. July 11, 1996) (Peck, M.J.), aff'd, 117 F.3d 652 (2d Cir. 1997).

employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.

§ 2000e-2(a)(1).

In connection with discrimination claims under Title VII, the Second Circuit applies

the burden-shifting analysis established by the Supreme Court in <u>McDonnell Douglas Corp.</u> v.

<u>Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).[7/]  <u>See</u>, <u>e.g.</u>, <u>Brown</u> v. <u>City of Syracuse</u>, 673

---

[7/]    Employment discrimination claims brought under the NYSHRL and the NYCHRL also are analyzed using the <u>McDonnell Douglas</u> analysis. <u>E.g.</u>, <u>Spiegel</u> v. <u>Schulmann</u>, 604 F.3d 72, 80 (2d Cir. 2010) ("This Court has determined that a plaintiff's discrimination claims under both the NYSHRL and the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII."); <u>Leibowitz</u> v. <u>Cornell Univ.</u>, 584 F.3d 487, 498 n.1 (2d Cir. 2009) ("[D]iscrimination claims brought pursuant to the NYSHRL, and the NYCHRL are analyzed under the Title VII framework."); <u>Fall</u> v. <u>N.Y.S. United Teachers</u>, 289 F. App'x 419, 422 (2d Cir. 2008) ("The <u>McDonnell Douglas</u> burden-shifting analysis 'is also applicable to [the plaintiff's] claims under the NYSHRL.'"); <u>John</u> v. <u>Dep't of Info. Tech. & Telecomm.</u>, 06 Civ. 13119, 2008 WL 4694596 at *3 (S.D.N.Y. Oct. 23, 2008) (<u>McDonnell Douglas</u> analysis applies to NYSHRL and NYCHRL claims.); <u>Forrest</u> v. <u>Jewish Guild for the Blind</u>, 3 N.Y.3d 295, 305 n.3, 786 N.Y.S.2d 382, 391 n.3 (2004) ("The standards for recovery under the New York State Human Rights Law are the same as the federal standards under [T]itle VII of the Civil Rights Act of 1964. Thus, '[b]ecause both the Human Rights Law and [T]itle VII address the same type of discrimination, afford victims similar forms of redress, are textually similar and ultimately employ the same standards of recovery, federal case law in this area also proves helpful to the resolution of this appeal.' Further, the human rights provisions of the New York City Administrative Code mirror the provisions of the [New York State] Executive Law and should therefore be analyzed according to the same standards." (citations omitted)).

However, the NYCHRL is to be construed more liberally. <u>E.g.</u>, <u>Adams</u> v. <u>City of N.Y.</u>, No. 07-CV-2325, --- F. Supp. 2d ----, 2011 WL 4434226 at *13 (E.D.N.Y. Sept. 22, 2011); <u>Williams</u> v. <u>N.Y.C. Hous. Auth.</u>, 61 A.D.3d 62, 75, 872 N.Y.S.2d 27, 37-38 (1st Dep't), <u>appeal denied</u>, 13 N.Y.3d 702, 885 N.Y.S.2d 716 (2009); <u>see also</u>, <u>e.g.</u>, <u>Hanna</u> v. <u>N.Y. Hotel Trades Council</u>, 18 Misc. 3d 436, 438 n.1, 851 N.Y.S.2d 818, 822 n.1 (Sup. Ct. N.Y. Co. 2007) ("NYCHRL is to be liberally and independently construed with the aim of making it more protective than its federal . . . or state . . . counterparts."). As I previously explained: "As this Court has pointed out several times, while the cases . . . employ the same federal analysis to NYCHRL claims, the legislative history of the NYCHRL makes clear that it is to be even more liberally construed than the federal and state anti-discrimination laws." <u>Viruet</u> v. <u>Citizen Advice Bureau</u>, 01 Civ. 4594, 2002 WL 1880731 at *14 n.28 (S.D.N.Y. Aug. 15, 2002) (Peck, M.J.) (quotations omitted; citing cases). Because
(continued...)

F.3d 141, 150 (2d Cir. 2012); Desir v. City of N.Y., 453 F. App'x 30, 33 (2d Cir. 2011); Leibowitz

v. Cornell Univ., 584 F.3d at 498.

Under the familiar McDonnell Douglas burden-shifting analysis, the plaintiff has

the burden at the outset of "proving by the preponderance of the evidence a prima facie case of

discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089,

1093 (1981); see, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S. Ct.

2097, 2106 (2000); McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S. Ct. at 1824.[8/]

Establishment of a prima facie case "'in effect creates a presumption that the employer unlawfully

discriminated against the employee.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506, 113 S. Ct.

at 2747 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 254, 101 S. Ct. at 1094).[9/]

---

[7/]     (...continued)
         the parties in this case have not argued for a different result under the NYCHRL than the
         NYSHRL or Title VII, and because Williams' claims survive summary judgment under Title
         VII (see below), the Court will not pursue the issue any further in this case.

[8/]     See also, e.g., Raytheon Co. v. Hernandez, 540 U.S. 44, 50 n.3, 124 S. Ct. 513, 517 n.3
         (2003); O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 310, 116 S. Ct. 1307, 1309
         (1996); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 2746-47 (1993);
         Ruszkowski v. Kaleida Health Sys., 422 F. App'x 58, 60 (2d Cir. 2011); United States v.
         Brennan, 650 F.3d 65, 93 (2d Cir. 2011); Leibowitz v. Cornell Univ., 584 F.3d at 498;
         Dorfman v. Doar Commc'ns, Inc., 314 F. App'x 389, 390 (2d Cir. 2009); DeSalvo v.
         Volhard, 312 F. App'x 394, 396 (2d Cir.), cert. denied, 130 S. Ct. 70 (2009); Fall v. N.Y.S.
         United Teachers, 289 F. App'x at 420-21; Nader v. ABC Television, Inc., 150 F. App'x 54,
         55 (2d Cir. 2005); Mandell v. Cnty. of Suffolk, 316 F.3d 368, 377-78 (2d Cir. 2003); Mario
         v. P&C Food Mkts., Inc., 313 F.3d 758, 767 (2d Cir. 2002); Collins v. N.Y.C. Transit Auth.,
         305 F.3d 113, 118 (2d Cir. 2002); Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000);
         Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

[9/]     See also, e.g., Crawford v. Dep't of Investigation, 324 F. App'x 139, 141 (2d Cir. 2009);
         Smith v. New Venture Gear, Inc., 319 F. App'x 52, 54 (2d Cir. 2009); Joseph v. Leavitt, 465
         F.3d 87, 90 (2d Cir. 2006), cert. denied, 549 U.S. 1282, 127 S. Ct. 1855 (2007); Mandell v.
         Cnty. of Suffolk, 316 F.3d at 380; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Scaria
         v. Rubin, 117 F.3d 652, 654 (2d Cir. 1997).

Once a plaintiff claiming employment discrimination establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for its employment decision.  E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142-43, 120 S. Ct. at 2106; McDonnell Douglas Corp. v. Green, 411 U.S. at 802, 93 S. Ct. at 1824.[10/]  The burden on the defendant at this phase is one of production rather than persuasion.  E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142, 120 S. Ct. at 2106.[11/]

"Although intermediate evidentiary burdens shift back and forth under [the McDonnell Douglas] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 143, 120 S. Ct. at 2106.

If the defendant articulates a non-discriminatory reason, the McDonnell Douglas burden-shifting framework drops out of the picture, and the plaintiff must show that the adverse

---

[10/]   See also, e.g., Raytheon Co. v. Hernandez, 540 U.S. at 50 n.3, 124 S. Ct. at 517 n.3; O'Connor v. Consol. Coin Caterers Corp., 517 U.S. at 310, 116 S. Ct. at 1309; St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 506-07, 113 S. Ct. at 2747; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253-54, 101 S. Ct. at 1093-94; Desir v. City of N.Y., 453 F. App'x at 33-34; United States v. Brennan, 650 F.3d at 93; Leibowitz v. Cornell Univ., 584 F.3d at 498-99; Dorfman v. Doar Commc'ns, Inc., 314 F. App'x at 390; DeSalvo v. Volhard, 312 F. App'x at 396; Fall v. N.Y.S. United Teachers, 289 F. App'x at 421; Nader v. ABC Television, Inc., 150 F. App'x at 55; Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004); Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); Mandell v. Cnty. of Suffolk, 316 F.3d at 380; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Schnabel v. Abramson, 232 F.3d at 88; Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003); Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997); Scaria v. Rubin, 117 F.3d at 654; Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 38.

[11/]   See also, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 507, 113 S. Ct. at 2747; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 257, 101 S. Ct. at 1096; Terry v. Ashcroft, 336 F.3d at 144 n.17; Scaria v. Rubin, 117 F.3d at 654.

employment decision more likely than not was motivated in whole or part by discriminatory reasons. E.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 142-43, 120 S. Ct. at 2106.[12/] "Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, . . . the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. at 143, 120 S. Ct. at 2106 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 255 n.10, 101 S. Ct. at 1095 n.10).

The Supreme Court in 2000 clarified the standard at this stage of the McDonnell Douglas analysis:

> [I]n St. Mary's Honor Center . . . . we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not compel judgment for the plaintiff. The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." In other words, "[i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination."
>
> In reaching this conclusion, however, we reasoned that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. . . .

---

[12/] See also, e.g., Raytheon Co. v. Hernandez, 124 S. Ct. at 517 n.3; St. Mary's Honor Ctr. v. Hicks, 509 U.S. at 510, 113 S. Ct. at 2749; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 253, 101 S. Ct. at 1093-94; Allen v. Murray-Lazarus, No. 10-5220-CV, 2012 WL 539968 at *1 (2d Cir. Feb. 21, 2012); Desir v. City of N.Y., 453 F. App'x at 34; United States v. Brennan, 650 F.3d at 93; Leibowitz v. Cornell Univ., 584 F.3d at 499; DeSalvo v. Volhard, 312 F. App'x at 396; Fall v. N.Y.S. United Teachers, 289 F. App'x at 421; Feingold v. New York, 366 F.3d at 152; Mandell v. Cnty. of Suffolk, 316 F.3d at 380-81; Mario v. P&C Food Mkts., Inc., 313 F.3d at 767; Weinstock v. Columbia Univ., 224 F.3d at 42; Scaria v. Rubin, 117 F.3d at 654.

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, <u>a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated</u>.

<u>This is not to say that such a showing by the plaintiff will always be adequate to sustain a jury's finding of liability</u>. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred. To hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review under Rule 50 [or Rule 56], and we have reiterated that trial courts should not "'treat discrimination differently from other ultimate questions of fact.'"

<u>Whether judgment as a matter of law [or summary judgment] is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law</u>.

<u>Reeves</u> v. <u>Sanderson Plumbing Prods., Inc.</u>, 530 U.S. at 146-49, 120 S. Ct. at 2108-09 (emphasis added & citations omitted).

After <u>Reeves</u>, the Second Circuit has made clear that merely proving a prima facie case and disproving the employer's explanation for its conduct at the third step of the <u>McDonnell Douglas</u> analysis will not preclude summary judgment in all cases; rather, a case-by-case analysis is necessary:

In examining the impact of <u>Reeves</u> on our precedents, we conclude that <u>Reeves</u> prevents courts from imposing a <u>per se</u> rule requiring <u>in all instances</u> that a [Title VII] claimant offer more than a prima facie case and evidence of pretext. . . . But the converse is not true; following <u>Reeves</u>, <u>we decline to hold that no [Title VII] defendant may succeed on a summary judgment motion so long as the plaintiff has established a prima facie case and presented evidence of pretext.  Rather, we hold that the Supreme Court's decision in Reeves clearly mandates a case-by-case approach</u>, with a court examining the entire record to determine whether the plaintiff could satisfy his "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff."

<u>Schnabel</u> v. <u>Abramson</u>, 232 F.3d at 90 (emphasis added).[13]

## III.   MT. SINAI IS DENIED SUMMARY JUDGMENT WITH RESPECT TO WILLIAMS' DISCRIMINATION CLAIMS

### A.   <u>Williams' Established a Prima Facie Case of Discrimination</u>

It is well settled that a plaintiff asserting a claim under Title VII must first establish a prima facie case of discrimination.  (<u>See</u> cases cited at page 17 above.)  A Title VII plaintiff meets that burden by showing that:  (1) she was within a protected group, (2) she was qualified for the functions of his position, (3) she suffered an adverse employment action, and (4) that the action took

---

[13]   See also, e.g., <u>Braun</u> v. <u>Securitas Sec. Servs. USA, Inc.</u>, 372 F. App'x 113, 114 (2d Cir. 2010); <u>Butts</u> v. <u>N.Y.C. Dep't of Hous. Pres. & Dev.</u>, 307 F. App'x 596, 599 (2d Cir. 2009); <u>Cross</u> v. <u>N.Y.C. Transit Auth.</u>, 417 F.3d 241, 248 (2d Cir. 2005); <u>Feingold</u> v. <u>New York</u>, 366 F.3d at 152; <u>Roge</u> v. <u>NYP Holdings, Inc.</u>, 257 F.3d 164, 167-68 (2d Cir. 2001); <u>Abdu-Brisson</u> v. <u>Delta Air Lines, Inc.</u>, 239 F.3d 456, 469-70 (2d Cir.), <u>cert. denied</u>, 534 U.S. 993, 122 S. Ct. 460 (2001); <u>James</u> v. <u>N.Y. Racing Ass'n</u>, 233 F.3d 149, 156-57 (2d Cir. 2000); <u>Weinstock</u> v. <u>Columbia Univ.</u>, 224 F.3d at 42 ("In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination."); <u>Aksamit</u> v. <u>772 Park Ave. Corp.</u>, 00 Civ. 5520, 2003 WL 22283813 at *6 (S.D.N.Y. Oct. 2, 2003) ("[A] plaintiff's establishment of a prima facie case and rebuttal of a nondiscriminatory reason for the adverse action do not save the plaintiff from summary judgment when there is insufficient evidence of discrimination."), <u>aff'd</u>, 128 F. App'x 204 (2d Cir. 2005); <u>Weiser</u> v. <u>Forest Pharm., Inc.</u>, 99 Civ. 1809, 2001 WL 293951 at *7-8 (S.D.N.Y. Mar. 26, 2001); <u>Tanay</u> v. <u>Saint Barnabas Hosp.</u>, 99 Civ. 9215, 2001 WL 262695 at *4 (S.D.N.Y. Mar. 15, 2001); <u>Connell</u> v. <u>Consol. Edison Co.</u>, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000) (Chin, D.J.) ("The key is whether there is sufficient evidence in the record – whether it consists of just the prima facie case and proof of pretext alone or those items together with additional evidence – to support an inference of discrimination.").

place under circumstances giving rise to an inference of discrimination.  See, e.g., Brown v.

Syracuse, 673 F.3d 141, 150 (2d Cir. 2012); Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir.

2012); Ruszkowski v. Kaleida Health Sys., 422 F. App'x 58, 60 (2d Cir. 2011); United States v.

Brennan, 650 F.3d 65, 93 (2d Cir. 2011).[14/]  "The burden of establishing a prima facie case is not

onerous, and has been frequently described as minimal." Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir.

1997); accord, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506, 113 S. Ct. 2742, 2746-47

(1993).[15/]

      Williams has met these minimal requirements.  Williams is black, thus, a member

of a protected class.  (See page 1 above.)  Williams clearly was qualified for the PCA position at

which she had worked since 1996, with no problems until 2010.  (See page 2 above.)  Williams

suffered an adverse employment decision when she was terminated in March 2011.  (See page 8

above.)  As to the fourth element, Williams does not point to any race-based comments by Mt. Sinai

staff; rather, she attempts to show that she was terminated because of race discrimination by

---

[14/]    See also, e.g., Leibowitz v. Cornell Univ., 584 F.3d 487, 498 (2d Cir. 2009); Crawford v. Dep't of Investigation, 324 F. App'x 139, 141 (2d Cir. 2009); Danzy v. Chao, 177 F. App'x 133, 134 (2d Cir. 2006); Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001); Hollander v. Am. Cynamid Co., 172 F.3d 192, 199 (2d Cir.), cert. denied, 528 U.S. 965, 120 S. Ct. 399 (1999).

[15/]    See also, e.g., Broich v. Inc. Vill. of Southampton, No. 11-0467-CV, 2012 WL 470422 at *3 (2d Cir. Feb. 15, 2012); Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir. 2008); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003); Austin v. Ford Models, Inc., 149 F.3d 148, 152 (2d Cir. 1998); Raskin v. Wyatt Co., 125 F.3d 55, 64 (2d Cir. 1997); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 32 (2d Cir. 1994); Fisher v. Vassar Coll., 114 F.3d 1332, 1335 (2d Cir. 1997), cert. denied, 522 U.S. 1075, 118 S. Ct. 851 (1998); Williams v. N.Y.C. Dep't of Sanitation, 00 Civ. 7371, 2001 WL 1154627 at *16 (S.D.N.Y. Sept. 28, 2001) (Peck, M.J.); Gonzalez v. N.Y.C. Transit Auth., 00 Civ. 4293, 2001 WL 492448 at *13 (S.D.N.Y. May 9, 2001) (Peck, M.J.); Cobian v. New York City, 99 Civ. 10533, 2000 WL 1782744 at *16 (S.D.N.Y. Dec. 6, 2000) (Peck, M.J.), aff'd, 23 F. App'x 82 (2d Cir. 2001); Weber v. Parfums Givenchy, Inc., 49 F. Supp. 2d 343, 357 (S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.).

showing that Buchsbaum, a Caucasian employee with similar patient complaints, was   not

terminated.  (See pages 9-11 above.)

Absent direct evidence of a defendant's discriminatory intent, a plaintiff may

establish the fourth prong of the prima facie case, circumstances giving rise to an inference of

discrimination, by showing that she was treated differently than similarly situated employees outside

her protected group.  See, e.g., Broich v. Inc. Vill. of Southampton, 2012 WL 470422 at *2; Ruiz

v. Cnty. of Rockland, 609 F.3d 486, 493 (2d Cir. 2010); Berube v. Great Atl. & Pac. Tea Co., No.

08-1229-CV, 2009 WL 3316381 at *2 (2d Cir. Oct. 15, 2009); Mandell v. Cnty. of Suffolk, 316 F.3d

368, 379 (2d Cir. 2003); Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000); Shumway v.

United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997); Conway v. Microsoft, 414 F. Supp. 2d

450, 459 (S.D.N.Y. 2006).  In order to prove that she was subjected to disparate treatment, a plaintiff

must show that she was "'similarly situated in all material respects' to the individuals with whom she

seeks to compare herself."  Conway v. Microsoft, 414 F. Supp. 2d at 459.[16/]  "What constitutes 'all

material respects' . . . varies somewhat from case to case and . . . must be judged based on

(1) whether the plaintiff and those [she] maintains were similarly situated were subject to the same

workplace standards and (2) whether the conduct for which the employer imposed discipline was

of comparable seriousness."  Graham v. Long Island R.R., 230 F.3d at 40 ("Hence, the standard for

---

[16/]   Accord, e.g., Broich v. Inc. Vill. of Southampton, 2012 WL 470422 at *2; Ruiz v. Cnty. of
Rockland, 609 F.3d at 494; Berube v. Great Atl. & Pac. Tea Co., 2009 WL 3316381 at *2;
Mandell v. Cnty. of Suffolk, 316 F.3d at 379; McGuinness v. Lincoln Hall, 263 F.3d 49, 53-
54 (2d Cir. 2001); Graham v. Long Island R.R., 230 F.3d at 39; Shumway v. United Parcel
Serv., Inc., 118 F.3d at 64.

comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases. . . .").[17]

"Whether two employees are similarly situated ordinarily presents a question of fact for the jury."  Graham v. Long Island R.R., 230 F.3d at 39; accord, e.g., Broich v. Inc. Vill. of Southampton, 2012 WL 470422 at *2; Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007).  Here, Williams has adduced enough evidence to support a finding that she and Buchsbaum were similarly situated in all material respects.  Williams and Buchsbaum both worked in 8 East.  (See pages 2, 9 above.)  Both were disciplined by Jaromahum.  (See pages 3-8, 9-11 above.)  Both Williams and Buchsbaum had multiple patient complaints between April 2010 and March 2011.  (See pages 3-8, 9-11 above.)  The nature of the complaints were similar, including complaints that they were rude, made inappropriate comments and failed to fulfill patient requests. (See pages 3-8, 9-11 above.)  Were a jury to find Williams and Buchsbaum similarly situated, it could conclude that the disparate treatment Williams received raises an inference of discrimination.

Accordingly, Williams has established a prima facie case of discrimination.

---

[17]   See also, e.g., Rommage v. MTA Long Island R.R., 452 F. App'x 70, 71 (2d Cir. 2012) ("'[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical.'"); Ruiz v. Cnty. of Rockland, 609 F.3d at 493-94 ("An employee is similarly situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'"); Stepheny v. Brooklyn Hebrew Sch. for Special Children, 356 F. Supp. 2d 248, 260 (E.D.N.Y. 2005) ("'Similarly situated' means the other employee 'must have engaged in conduct similar to the plaintiff's without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.'").

**B.    Mt. Sinai Articulated Legitimate, Non-Discriminatory Reasons for Its Termination of Williams**

Mt. Sinai asserts that Williams "was discharged for rendering unsatisfactory patient care and not because of her race."  (Dkt. No. 34: Mt. Sinai Br. at 18-21.)  Williams admits that she was disciplined for five patient complaints but disputes some of the underlying conduct that resulted in the patient complaints.  (See pages 3-8 above.)  Nonetheless, Mt. Sinai has met its burden at the second McDonnell Douglas stage of articulating a legitimate, non-discriminatory reason for terminating Williams' employment.  See, e.g., Escribano v. Greater Hartford Acad. of Arts, 449 F. App'x 39, 42 (2d Cir. 2011) (Defendant "presented sufficient evidence that, if believed by the trier of fact, supports the conclusion that [plaintiff]'s classes were cut for nondiscriminatory . . . reasons—in this instance, due to budgetary constraints . . . —and not as a result of [plaintiff]'s race . . . .").[18]

Accordingly, Mt. Sinai has articulated a legitimate, non-discriminatory reason for Williams' termination.

**C.    There Are Disputed Factual Issues As To Whether Mt. Sinai's Articulated Legitimate, Non-Discriminatory Reasons for Williams' Termination Are Pretextual**

Williams asserts that Mt. Sinai's "reasons for terminating [her] are pretextual."  (Dkt. No. 39: Williams Opp. Br. at 18-22.)  "A showing that similarly situated employees belonging to a different racial group received more favorable treatment can also serve as evidence that the

---

[18]    See also, e.g., Barkley v. Penn Yan Cent. Sch. Dist., 442 F. App'x 581, 585 (2d Cir. 2011) (concerns regarding plaintiff's erratic and aggressive behavior constituted legitimate, non-discriminatory reason); Bernard v. JP Morgan Chase Bank NA, 408 F. App'x 465, 467-68 (2d Cir. 2011) (terminating employee for failure to meet clearly established sales goals constituted legitimate, non-discriminatory reason); Khan v. Bank of Am., N.A., 372 F. App'x 216, 217-18 (2d Cir. 2010) (terminating employee for performance errors and behavioral issues constituted legitimate, non-discriminatory reason).

employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for racial discrimination." Graham v. Long Island R.R., 230 F.3d 34, 43 (2d Cir. 2000); see, e.g., Chao v. Mount Sinai Hosp., No. 11-1328-CV, 2012 WL 1292757 at *3 (2d Cir. Apr. 17, 2012) (upholding grant of summary judgment because plaintiff "fail[ed] to identify any material difference between his treatment and that of similarly situated persons who do not fall within his protected classes."); Adamczyk v. N.Y.C. Dep't of Corr. Servs., No. 11-1406-CV, 2012 WL 1130637 at *3 (2d Cir. Apr. 5, 2012); Iuorno v. DuPont Pharm. Co., 129 F. App'x 637, 640 (2d Cir. 2005).

      Williams has presented sufficient evidence to allow a reasonable inference that Mt. Sinai's rationale was a pretext for discrimination.  Mt. Sinai argues that there was no discrimination because Johnson, not Jaromahum, decided the level of discipline.  (See Dkt. No. 34: Mt. Sinai Br. at 21-22; Dkt. No. 44: Mt. Sinai Reply Br. at 9.)  Jaromahum, however, had the discretion to and decided to initiate disciplinary proceedings with Labor Relations.  (See pages 3-8, 9-11 above.)  Mt. Sinai's disciplinary process is subjective in that the manager determines who and what conduct to report to Labor Relations for discipline.  (See page 3 above.)  Taken in the light most favorable to Williams, the disciplinary decisions made by Jaromahum raise a material issue of fact concerning Williams' contention that Mt. Sinai's articulated reasons for termination were pretextual.

      Mt. Sinai also asserts that Jaromahum gave other black employees favorable reviews and that Jaromahum terminated a Caucasian and Filipino employee.  (See Mt. Sinai Br. at 25; Mt. Sinai Reply Br. at 6; see page 9 above.)  "Since Title VII's principal focus is on protecting individuals, rather than a protected class as a whole, an employer may not escape liability for discriminating against a given employee on the basis of race simply because it can prove it treated

other members of the employee's group favorably." <u>Graham</u> v. <u>Long Island R.R.</u>, 230 F.3d at 43.[19/]

This evidence is insufficient to award summary judgment for Mt. Sinai.  "Only where overwhelming

evidence exists that an employer acted for reasons other than discrimination will the proof submitted

by the plaintiff as to similarly situated employees be negated."  <u>Graham</u> v. <u>Long Island R.R.</u>, 230

F.3d at 44.  Mt. Sinai's evidence creates a question of fact for the jury.  The question before the

Court is whether a rational juror could find that unlawful discrimination played a motivating role

in Mt. Sinai's decision to terminate Williams, despite any legitimate grounds it may have had.

Viewing all of the evidence in the light most favorable to Williams, and drawing all

reasonable inferences in her favor, a rational juror could find that Mt. Sinai terminated Williams in

part because she is black.  <u>See</u>, <u>e.g.</u>, <u>Katz</u> v. <u>Adecco USA, Inc.</u>, 11 Civ. 2540, --- F. Supp. 2d ----,

2012 WL 78156 at *7 (S.D.N.Y. Jan. 10, 2012) ("[T]here are genuine issues of material fact

regarding whether these proffered reasons were mere pretext meant to cover the true reason for

[defendant]'s failure to hire Plaintiff . . . ."); <u>Williams</u> v. <u>Regus Mgmt. Grp., LLC</u>, 10 Civ. 8987, ---

F. Supp. 2d ----, 2011 WL 6073560 at *13 (S.D.N.Y. Dec. 6, 2011) (Plaintiff "has provided

sufficient evidence to permit a reasonable juror to conclude that his transfer was motivated in part

by discrimination."); <u>White</u> v. <u>Dep't of Corr. Servs.</u>, 814 F. Supp. 2d 374, 391 (S.D.N.Y. 2011)

---

[19/]    <u>See</u>, <u>e.g.</u>, <u>Brown</u> v. <u>Henderson</u>, 257 F.3d 246, 252 (2d Cir. 2001) ("As a result, discrimination against one employee cannot be cured, or disproven, solely by favorable, or equitable, treatment of other employees of the same race or sex."); <u>Calabro</u> v. <u>Westchester BMW, Inc.</u>, 398 F. Supp. 2d 281, 294 (S.D.N.Y. 2005); <u>Reissner</u> v. <u>Rochester Gas & Elec. Corp.</u>, No. 02-CV-6353, 2004 WL 941645 at *8 (W.D.N.Y. Apr. 22, 2004) ("In determining whether an employee has been discriminated against 'because of such individual's . . . sex,' the courts have consistently emphasized that the ultimate issue is the reasons for the individual plaintiff's treatment, not the relative treatment of different groups within the workplace." (citation omitted)); <u>Jamieson</u> v. <u>Poughkeepsie City Sch. Dist.</u>, 195 F. Supp. 2d 457, 468 (S.D.N.Y. 2002) ("However, discrimination against one person cannot be cured by favorable treatment of other employees in the same protected group.").

(denying summary judgment for employer "because a reasonable jury could find that the reasons offered for the adverse actions were pretextual"); Edrisse v. Marriott Int'l, Inc., 757 F. Supp. 2d 381, 390 (S.D.N.Y. 2010) ("[D]efendants are not entitled to summary judgment on plaintiff's discrimination claims, as there is sufficient evidence to allow a reasonable jury to conclude that this proffered basis was a pretext for unlawful discrimination."); Abrams v. Duane Reade, 419 F. Supp. 2d 476, 481-82 (S.D.N.Y. 2005) (genuine issues of material fact existed as to whether employer's stated reasons for not offering positions were a pretext for discrimination); Calabro v. Westchester BMW, Inc., 398 F. Supp. 2d at 294 (denying summary judgment for employer where genuine issues of material fact existed as to whether the employer's stated reasons for termination were pretext for discrimination).

Accordingly, Mt. Sinai's motion for summary judgment on Williams' Title VII claim for race discrimination is DENIED.[20]

**CONCLUSION**

For the reasons set forth above, Mt. Sinai's summary judgment motion (Dkt. No. 22) is DENIED.

---

[20]    Since claims brought pursuant to the NYSHRL and NYCHRL are analyzed under the same rubric as Title VII, material issues of fact also remain with respect to Williams' NYSHRL and NYCHRL discrimination claims.   Accordingly, Mt. Sinai's motion for summary judgment on Williams' claims of race and color discrimination under NYSHRL and NYCHRL also is DENIED.

## SCHEDULING ORDER

The Joint Pretrial Order is due June 8, 2012. Counsel should confer and jointly call my chambers to schedule the commencement of trial for some time soon after submission of the PTO. Counsel also should discuss settlement of the case.

SO ORDERED.

Dated:   New York, New York
         May 8, 2012

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies **by ECF** to:   Scott J. Steiner, Esq.
                        Rory J. McEvoy, Esq.